V

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ASHMINDAR JEET SINGH,

        Petitioner,               No. CIV S-09-1453 GEB CHS

    vs.

MICHAEL MARTEL,

        Respondent.    <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

INTRODUCTION

        Petitioner Singh, a state prisoner, proceeds pro se with an amended petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254.  Petitioner stands convicted of various sex offenses in the Sacramento County Superior Court, case number 01F01700, for which he is currently serving an aggregate prison term of 39 years to life.

BACKGROUND

        The following recitation of facts is taken from the unpublished opinion of the California Court of Appeal, Third District, on direct review of petitioner's convictions.  Since these facts have not been rebutted with clear and convincing evidence, they are presumed correct. 28 U.S.C. § 2254(e)(1); *Taylor v. Maddox*, 336 F.3d 992, 1000 (9th Cir. 2004).

/////

1

From August 2000 to February 2001, a group of young men picked up prostitutes on Stockton Boulevard in Sacramento, kidnapped and sexually assaulted them. Their crime spree ended after they picked up a teenager who was not a prostitute. She escaped after the sexual assault and called the police. One of her attackers was arrested at the scene and the others shortly thereafter.

In a 68-count information, the People charged six defendants with various crimes arising from serial gang rapes against eight victims. The court severed the trial of one defendant, and the case proceeded to trial against the remaining five defendants [including petitioner Singh] with two juries. Seven counts involving one victim were dismissed after she failed to appear at trial. The two juries convicted defendants of most, but not all, of the charged offenses. Each defendant was sentenced to a lengthy prison term, including a life sentence.

...

As with most sexual assault cases, this case turned on the credibility of the victims, both as to what crimes occurred and who the perpetrators were. All of the victims' credibility was bolstered by the number of victims; seven women told very similar stories. Corroboration was also provided by DNA and other forensic evidence. In the case of Naryan, who had a separate jury, the prosecution also presented his three statements to the police in which he admitted some of the conduct at issue. The strength of the evidence varied as to each victim. The prosecution did not present the case in chronological order; rather, the strongest case, in which the victim was not a prostitute and reported the assault immediately, was presented first.

*People v. Deo*, *et al.*, 2008 WL 2404210 at 1 (Cal. Ct. of App. 3rd Dist. June 13, 2008).

Petitioner was charged and convicted in connection with only one of the victims, named Jennifer.  Evidence was presented at trial with respect to the offenses against Jennifer (Counts 27 to 33) as follows:

Shortly after midnight, on the morning of February 21, 2001,-about 24 hours before [another victim]'s assault- 33-year-old Jennifer S. was working as a prostitute on Stockton Boulevard between 47th and 65th Streets. A car pulled up and she asked the man if he wanted a date. He said yes and she got in. The man said he had $60 and a place around the corner. He turned on 65th Street and drove to the end of Savings Place. He said it was safe; he had been there before. The car door opened and three men with jackets over their heads appeared; two had knives. Jennifer looked to the driver, who just smiled. They put her in the back seat. When she screamed, they put a knife to her face and told her to shut up and do what they

said.

Then they drove out into the country. She told them she had a son and begged them not to kill her. They said they were taking her to a friend's party. One man told her they would not kill her; she would not get hurt.

The bald man next to Jennifer, Narayan, had her fondle him and orally copulate him. The men in the front seats passed a crank pipe. The car turned onto a gravel road, at the end of which was a car and a bright light. They turned around and returned to Savings Place.

There two men walked her to an abandoned car. One man held her arm tight and told her not to run or try anything stupid because they had guns and would kill her. She got in the car and Narayan followed. He told her to remove her pants and asked if she had a condom. She did not because one of the other men had taken it from her earlier. Narayan got on top and raped her. He made her promise not to tell the others that he had not used a condom. He ejaculated. During the rape, Narayan's penis slipped out at least twice and he reinserted it.

The next guy (Singh) got in. He put on a condom and had her orally copulate him until he ejaculated. She removed his condom and threw it out the window of the car.

The driver (Deo) got in front and told her to come up front. Since she did not have a condom, he said she could orally copulate him. He fondled her breasts. When he ejaculated, she spit it on the floor board of the car. He told her the fourth guy would be coming; he was the mean one. He told her not to try to get away because they had guns and would kill her. Once she heard a car drive off, she took off running. The men had taken her two silver rings. She had given them her money, fifty cents.

When she got home she did not call the police because she had outstanding warrants and could not bear the thought of going to jail after she had been raped. When she calmed down somewhat, she called the police, but the officer could not guarantee no arrest, so she did not report the assault. Jennifer reported it the next morning to Detective Sophia McBeth-Childs. She met McBeth-Childs and took her to the abandoned car. Jennifer refused to go to the hospital; saying she had been poked and prodded enough. She did give the detective the clothing she wore during the assault.

Jennifer selected Kumar's photograph from a lineup and said it looked like one of the assailants. At trial, she identified Narayan as the first assailant and Singh and Deo as two of her attackers.

/////

DNA analysis was conducted on the condom, a napkin, the floor mat and Jennifer's jeans. DNA on the inside of the condom matched Singh's profile. The probability of another match was at least 1 in a quadrillion. DNA on the napkin and the floor mat matched Deo; the probability of another match on the napkin was over 1 in several billion, and the probability of another match for the mixed sample on the floor mat was 1 in 500,000 for East Indians, 1 in 45 million for African Americans and 1 in 15 million for Hispanics. DNA on the jeans matched Narayan's profile with a probability of 1 in 30 trillion.

In a videotaped interview played to Narayan's jury, he described one assault where they used two knives to scare the victim.

Deo and Narayan were convicted of robbery, but Singh was acquitted on this count. All three men were convicted of sexual battery. They were convicted of three counts of rape in concert and two counts of oral copulation in concert. Kidnapping enhancements were found true as to all three; multiple victim enhancements were found true to Deo and Narayan. The jury found true an enhancement for personal use of a weapon only as to Narayan. The jury was unable to reach a unanimous verdict as to Kumar on any of these counts and the court declared a mistrial.

*Id*. at 6-7.

For his defense at trial, petitioner's counsel attacked the DNA evidence but also claimed the sex acts were consensual: she was a prostitute doing her job.  *Id*. at 11.

Petitioner was acquitted of robbery but convicted of sexual battery, three counts of rape in concert and two counts of oral copulation in concert.  The jury found true a kidnapping enhancement.  Petitioner was sentenced to 14 years plus 25 years to life in prison.

Petitioner and three of his codefendants appealed to the California Court of Appeal, Third District; each appellant filed his own brief.  In an unpublished opinion, the state appellate court affirmed petitioner's judgment and sentence.  A petition for review to the California Supreme Court was denied.  Petitioner sought habeas corpus relief in the California state courts where relief was likewise denied.  The parties agree that petitioner has exhausted state remedies with respect to all grounds presented in the petition.

/////

/////

4

1                            GROUNDS FOR RELIEF

2              The pending federal petition presents fifteen grounds for relief.  Each will be

3     separately set forth and discussed herein.  Petitioner claims, verbatim:

4        I.      The erroneous misjoinder of petitioner's trial with codefendants was
                 unusually prejudicial, rising to the level of deprivation of due process of
5                law, a fair trial, and the right to the assistance of counsel.

6        II.     Petitioner's rape in concert convictions are unsupported by substantial
                 evidence of force or violence, denying petitioner due process of law.
7
         III.    The court erred prejudicially in admitting evidence of photographs or
8                codefendants pointing guns at themselves and each other, denying
                 petitioner due process of law and a fai[r] trial.
9
         IV.     The prosecutor committed incurable prejudicial misconduct or
10               prosecutorial error in arguing the counts against the other defendants to
                 rebut petitioner's claim Jennifer S. consented, denying petitioner due
11               process of law and a fair trial.

12       V.      The instructions given in this case improperly directed the jury to make an
                 in concert finding if it found that petitioner was a[n] aider and abettor o[f]
13               the sexual offenses committed by others in this case.

14       VI.     The trial court committed prejudicial error by failing to instruct the jury
                 sua sponte that evidence of a pre[ ]-offense statement in the nature of an
15               admission by petitioner should be viewed with caution.

16       VII.    The court erred in instructing the jury with CALJIC No. 2.21.2, because
                 the instruction improperly permitted evaluation of the pivotal prosecution
17               testimony by a probability standard, denying petitioner due process of law.

18       VIII.   The cumulative effect of the errors discussed throughout deprived
                 petitioner of due process of law and a fair trial and requires reversal of the
19               judgment.

20       IX.     The trial court erred in imposing sentence for count 32 under penal code
                 section 667.6, subdivision (D), requiring remand for resentencing.
21
         X.      The full determinate consecutive terms imposed under counts 31 and 32
22               violated *Blakely v. Washington*.

23       XI.     Under the facts of this case, imposition of a term of 25 years to life under
                 Penal Code Section 667.61, subdivisions (D)(2), rather than 15 years to
24               life under subdivision (E)(1) of that section, deprived petitioner of due
                 process of law and equal protection of the law.
25

26    /////

XII.   Imposing added "in concert" punishment for oral copulation committed by threats, when rape in concert requires use of force or violence, likewise deprived petitioner of due process of law and equal protection of the law.

XIII.  The term of 39 years [t]o life imposed upon petitioner, a young man with no prior record, constituted cruel and unusual punishment under both the California and United States Constitutions.

XIV.   Petitioner was denied the effective assistance of counsel during his first and only appeal as of right in violation of the Sixth and Fourteenth Amendments to the Federal Constitution: Article I Section 15 of the California Constitution: *Strickland v. Washington* (1984) 466 U.S. 668; *People v. Pope* (1979) 23 Cal. 3d 412.

XV.    Petitioner was denied his right to the effective assistance of counsel during his state court trial under the Sixth and Fourteenth Amendments to the Federal Constitution: *Strickland v. Washington* (1984) 466 U.S. 668; *People v. Pope* (1979) 23 Cal. 3d 412.

## APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999). Under AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

DISPOSITION OF THE CLAIMS

I.      Misjoinder

As previously set forth, petitioner was charged only in connection with the counts 27-33, those involving the victim Jennifer.  But petitioner's jury also heard evidence regarding similar attacks against six other victims who testified at trial.  *People v. Deo*, *supra*, at 1-11.

A.      Additional Background

Petitioner moved for a severance at various points both prior to and during trial. First, months before trial, he filed a motion to sever his trial from the other defendants or, in the alternative, for a separate jury.  As the court of appeal later noted on direct review, the motion "contained little discussion or analysis," and simply cited four cases: *People v. Aranda*, 63 Cal.2d 518 (1965), *Bruton v. United States*, 391 U.S. 123 (1968), *Richardson v. Marsh*, 481 U.S. 200 (1987), and *Gray v. Maryland*, 523 U.S. 185 (1998).  *People v. Deo*, *et al.*, *supra*, at 23; (*see also* Clerk's Transcript ("CT") at 717-18).  The motion was denied.[1]  Petitioner renewed the motion during jury selection; again it was denied.  *People v. Deo*, *et al.*, *supra*, at 23.

After the jury was sworn in, but before the first witness testified, the trial court apparently noticed a joinder problem that was not explicitly raised in either of petitioner's prior motions.  Under section 1098 of the California Penal Code and *People v. Ortiz*, 22 Cal.3d 38 (1978), joinder was inappropriate for any defendant not joined with all other defendants in at least one single count.  The court invited severance motions from petitioner, Reginal Prasad and Nalesh Prasad, and recessed so counsel could research the issue.  Petitioner, through counsel, declined to move for severance and withdrew his previous motions on this issue without comment or explanation.  The trial court made a record of these events, noting also that Reginal Prasad's motion to sever was being granted and that Nalash Prasad had elected not to request severance and to be jointly tried, for tactical reasons.  (Reporter's Transcript ("RT") at 1581-84.)

---

[1] The trial court granted separate juries for Narayan and Reginal Prasad, the two defendants whose statements to the police would be admitted at trial.

1    Just before Jennifer was scheduled to testify, petitioner's attorney renewed his

2   motion to sever on the earlier raised *Aranda/Bruton* grounds,[2] contending that he would be

3   prejudiced by admission of his codefendants' incriminating extrajudicial statements which would

4   come in through Jennifer's testimony.  The trial court denied, the motion, noting it was not

5   brought under section 1098 of the Penal Code or *Ortiz*, 22 Cal.3d 38.  (RT at 2818-21.)

6    Near the end of the prosecution's case in chief, petitioner, through counsel, filed a

7   motion to sever, this time citing section 1098 of the Cal. Penal Code and *Ortiz*, 22 Cal.3d 38.

8   (CT at 769-82.)  In the motion, petitioner asserted that the trial court's previous offer to sever his

9   trial had been conditioned upon a waiver of speedy trial and double jeopardy rights and petitioner

10   elected not to waive those rights.  Petitioner argued that he was not required to waive

11   constitutional rights to obtain severance and moved for severance and dismissal based on double

12   jeopardy.

13    The trial court again denied the motion, holding essentially that petitioner had

14   waived the joinder issue and that "the potential [improper joinder] issue that previously existed

15   as to Ashmindar Singh has been cured through the diligence of the court in bringing the issue to

16   counsel's attention and the subsequent actions taken by certain counsel on behalf of their

17   respective clients."  (RT at 5585.)  The trial court put a lengthy ruling on the record, later

18   summarized by the court of appeal as follows:

19    The court recited the history of the various severance motions.
       Once the court noticed the severance problem under *Ortiz*, supra,
20       22 Cal.3d 38, 148 Cal.Rptr. 588, 583 P.2d 113, counsel for the
       Prasad brothers responded in a "straightforward" manner, but
21       counsel for Singh refused to state his decision to decline severance
       was either tactical or informed. The court found counsel's
22       comments "disingenuous," particularly since counsel had missed

23   ───────────────────

24    [2] The rules of *Aranda* and *Bruton* bar admission in a joint trial of one defendant's out-of-
     court confession that powerfully and facially incriminates a codefendant, even if the court

25   instructs the jury to consider the confession only against the declarant.  *Bruton v. United States*,
     391 U.S. 123, 126 (1968); *People v. Aranda*, 63 Cal.2d 518, 528-30 (1965).

26

1              an important legal argument for severance. The court stated it did
not force counsel to do anything; it simply gave him the law. The
2              court recalled the discussion of the benefit to Singh of having three
additional experienced DNA counsel to cross-examine expert
3              witnesses and the benefit of other skilled, competent defense
attorneys in the same trial. The court considered Singh's decision
4              not to sever to be "tactical, reasoned and considered." The court
concluded the issue of improper joinder was waived.

5

6  *People v. Deo, et al., supra,* at 24.

7              Petitioner claims here that the erroneous misjoinder of his trial with that of his

8  codefendants deprived him of due process of law, a fair trial, and his right to the effective

9  assistance of counsel.

10              B.       Disposition

11              The Supreme Court has addressed the question of misjoinder of defendants in the

12  context of Rule 8 of the Federal Rules of Criminal Procedure and consistently approved of joint

13  federal trials of multiple codefendants on grounds of judicial economy and in the interests of

14  justice.  *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (citing *Richardson v. Marsh*, 481 U.S.

15  200, 209 (1987) and *Opper v. United States* , 348 U.S. 84, 95 (1954));  *United States v. Lane*, 474

16  U.S. 438 (1986).  In *Lane*, the Supreme court noted that "[i]mproper joinder does not, in itself,

17  violate the Constitution," and further opined that misjoinder would rise to the level of a

18  constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth

19  Amendment right to a fair trial.  *Lane*, 474 U.S. at 446 n.8.  The Ninth Circuit recently held that

20  this comment was dicta, that it did not set forth a governing legal principle, and thus does not

21  constitute clearly established federal law for purposes of section 2254(d)(1).  *Collins v. Runnels*,

22  603 F.3d 1127, 1132 (9th Cir. 2010), *cert. denied*, 131 S.Ct. 243 (2010).  The Ninth Circuit

23  further held that "neither *Zafiro v. United States* nor *United States v. Lane* establish a

24  constitutional standard binding on the states requiring severance in cases where defendants

25  present mutually antagonistic defenses."  *Collins*, 603 F.3d at 1132-33.

26  /////

In a different line of cases, the Ninth Circuit has held that federal habeas corpus relief is available for improper consolidation only if the "simultaneous trial of more than one offense... actually render[ed] petitioner's state trial fundamentally unfair and hence, violative of due process." *Featherstone v. Estelle*, 948 F.2d 1497, 1503 (9th Cir. 1991); *see also Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) ("The requisite level of prejudice is reached only if the impermissible joinder had a substantial and injurious effect or influence in determining the jury's verdict.") (internal quotations and citation omitted).  In evaluating the prejudice suffered by petitioner, the focus is "particularly on [the] cross-admissibility of evidence and the danger of 'spillover' from one charge to another." *Id*.

The risk of undue prejudice is "particularly great whenever joinder of counts allows evidence of other crimes to be introduced in a trial where the evidence would otherwise be inadmissible." *Sandoval v. Calderon*, 241 F.3d 765, 772 (9th Cir. 2001).  "Undue prejudice may also arise from the joinder of a strong evidentiary case with a weaker one." *Id*. (citing *Bean v. Calderon*, 163 F.3d 1073, 1085 (9th Cir. 1998).  In both of those situations, the danger arises from the difficulty for a jury in "compartmentalizing the damaging information." *Id*. (citing *Bean*, 163 F.3d at 1084).  A jury's ability to compartmentalize the evidence is best demonstrated by its failure to convict the defendant on all counts. *Park v. California*, 202 F.3d 1146, 1150 (9th Cir. 2000).  In addition, prejudice can be limited "through an instruction directing the jury to consider each count separately." *Davis*, 384 F.3d at 639 (citing *Lane*, 474 U.S. at 450 n.13).  Such instructions "have a better chance for effectiveness 'when the evidence of each crime is simple and distinct, even in the absence of cross-admissibility.'" *Id*. (quoting *Bean*, 163 F.3d at 1084-85).

Respondent argues that because the Supreme Court has never squarely addressed the constitutional issue raised by petitioner's misjoinder claim, the court of appeal's decision could not have been contrary to, or an unreasonable application of any clearly established Supreme Court law.  In this case, there appears no need to decide what, if any, clearly established

1  Supreme Court precedent governs petitioner's claim under section 2254.  Petitioner fails to make

2  a meritorious constitutional claim because he has not shown the prejudice required under the

3  standard set forth in *Lane*, to the extent it is applicable, or under any of the Ninth Circuit's

4  precedent.  *See Lane*, 474 U.S. at 446 n.8; *Featherstone*, 948 F.2d at 1503; *Davis*, 384 F.3d at

5  638.

6         Although petitioner was charged in connection with only one of the eight victims

7  in the case, the evidence involving each victim was distinct as to both place and time.  *See*

8  *People v. Deo, et al.*, *supra*, at 1-11 (separately summarizing the facts of the offenses against

9  each victim).  This separation of counts and events reduced the potential for prejudice.  *See*

10 *Davis*, 384 F.3d at 639.  As the court of appeal noted, the trial court "took great care to fashion

11 and repeat appropriate limiting instructions," including telling jurors to consider evidence offered

12 on particular counts only against the defendant charged in those counts, and specifying the

13 relevant counts to which the evidence related throughout trial.  *People v. Deo, et al.*, *supra*, at 25;

14 (*see also* RT at 1587 (trial court instructed jurors "Unless you are otherwise instructed, evidence

15 presented regarding each count is admitted only against the defendant or defendants charged in

16 that count.  You may not consider this evidence against any other defendant not charged in that

17 count unless you are specifically otherwise instructed.").)  The trial court's instruction further

18 reduced the potential for prejudice.  *See Lane*, 474 U.S. at 450 n.13 (potential for prejudice from

19 joint trials "may be reduced to a minimum by carefully crafted limiting instructions with a strict

20 charge to consider the guilt or innocence of each defendant independently") (internal quotes and

21 brackets omitted); *Davis*, 384 F.3d 639 (prejudice can be limited by instructing jurors to consider

22 each count separately).

23         It is noteworthy that the jury acquitted petitioner on the robbery count in

24 connection with the offenses against Jennifer, while convicting codefendants Deo and Narayan

25 on that count.  *People v. Deo, et al.*, *supra*, at 26.  The jury also found the weapon enhancements

26 true only as to Narayan, who had admitted he had a knife.  *Id.*  This same jury failed to reach a

1  unanimous verdict as to Kumar on the counts involving Jennifer, even though Kumar was

2  convicted on forty-two counts involving four of the other victims.  *Id*.  As the court of appeal

3  noted, "[t]hese results indicate the jury considered the charges against each defendant

4  separately."  *Id*.

5         Petitioner argues that he was unusually susceptible to prejudice in this case

6  because he was the only defendant to assert consent as a defense, which was severely undermined

7  by evidence that his codefendants were involved in gang-style rapes of several other women who

8  worked as prostitutes.  "Mutually antagonistic defenses are not prejudicial per se."  *Zafiro*, 506

9  U.S. at 538.  Moreover, under all the circumstances, the case against petitioner was strong.  As

10  the court of appeal noted,

11              DNA evidence tied him to the crime and showed sex acts with
             several men had occurred, consistent with Jennifer's version of
12              events. The forensic evidence suggested assault rather than an act
             of prostitution. Jennifer proved an effective witness and she stood
13              up under cross-examination. While the defense offered reasons for
             her to lie, such as that she had to explain to her pimp why she had
14              no money after trading sex for drugs, the prosecution argued her
             reporting the crime despite her profession and outstanding warrants
15              showed her credibility. There was no evidence, from cross-
             examination of Jennifer or otherwise, to support the defense of
16              consent.[3]

17  *People v. Deo, et al., supra*, at 25.  Under these circumstances, petitioner's defense that Jennifer

18  consented to have sex with the group of men would have only been marginally stronger, if at all,

19  had petitioner been tried separately.  Petitioner fails to demonstrate the requisite prejudice for his

20  claim of improper joinder.  *See Zafiro*, 506 U.S. at 540 ("it is well settled that defendants are not

21  entitled to severance merely because they may have a better chance of acquittal in separate

22  trials").

23         In an alternative argument, petitioner claims that trial counsel rendered ineffective

24  assistance of counsel by failing to assert proper grounds in his pre-trial severance motion, and by

25  _____

26      [3] Petitioner did not testify at trial.

1   refusing to accept the trial court's mid-trial offer to grant severance and a new trial.

2           To demonstrate a denial of the Sixth Amendment right to the effective assistance

3   of counsel, a petitioner must establish that counsel's performance fell below an objective

4   standard of reasonableness, and that he suffered prejudice from the deficient performance.

5   *Strickland v. Washington*, 466 U.S. 668, 690 (1984).  Prejudice is found where there is a

6   reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

7   would have been different.  *Id.*

8           As to this claim, the court of appeal held:

9           On the surface trial counsel's actions in this case appear
            perplexing. He moved for severance, without any argument in
10          support other than simply citing to *Aranda/Bruton.* He failed to
            discover the statutory basis (Pen.Code, § 1098) that would have
11          made his motion meritorious. Then, when the trial court offered
            severance, he declined it and withdrew his earlier motions,
12          claiming he was unfairly being forced to choose between
            constitutional rights. He chose to retain his double jeopardy claim,
13          although he had no such claim to make, foregoing severance,
            which would have offered some benefit. Indeed, he now argues it
14          was his only hope for acquittal. On appeal, Singh contends this
            perplexing action shows trial counsel's ineffectiveness. We find
15          another explanation.

16          The record suggests Singh's counsel did not really want severance;
            if Singh was to be tried, counsel wanted him tried with the other
17          defendants. Pretrial counsel's efforts for severance were
            perfunctory. When offered severance, he refused unless he could
18          get dismissal as well. Both his motions for severance after the trial
            began also requested dismissal. The trial court indicated counsel
19          wanted the benefit of other defense counsel, including experienced
            DNA counsel. Further, counsel refused to put his reasons on the
20          record. Significantly, the first time Singh raised *Ortiz* as grounds
            for severance was after presentation of the DNA evidence. Perhaps
21          he concluded then that attacking the DNA was no longer a winning
            strategy.
22
            Whatever the reason for trial counsel's actions, the key question is
23          whether Singh was prejudiced by the counsel's failure to obtain
            severance. Since a proper motion for severance would have been
24          granted, Singh need only show that with severance a more
            favorable outcome was reasonably probable. "A reasonable
25          probability is a probability sufficient to undermine confidence in
            the outcome." (*Strickland v. Washington, supra,* 466 U.S. at pp.
26          693-694 [80 L.Ed.2d at pp. 697-698].) For the reasons set forth

                                        13

above in concluding the joint trial was not grossly unfair, we conclude Singh has failed to establish the reasonable probability of a more favorable outcome. The case against Singh was strong and the trial court took adequate steps to protect Singh from unfair prejudice caused by a joint trial. The consent defense was not as persuasive as Singh suggests, relying solely on argument and unsupported by evidence because Singh did not testify. Nor did the cross-examination of Jennifer provide any reason for the jury to find consent. There was no testimony about her boyfriend or pimp; she denied any of the sex acts were consensual and declared she never accepted drugs as payment. Singh was not denied effective assistance of counsel.

*People v. Deo*, *supra*, at 27-28 (citation omitted).

The court of appeal's finding of no prejudice was not contrary to, or an unreasonable application of the applicable *Strickland* standard, for the same reasons discussed in connection with the preceding argument.  As previously noted, the trial court was careful to instruct the jury to limit consideration of the evidence to the counts for which it was offered.  The evidence against petitioner was strong and his consent defense weak.  Moreover, the evidence for the counts not admissible against petitioner was no more inflammatory than that offered against him.  Petitioner fails to demonstrate a reasonable probability that he would have obtained a more favorable outcome had he been tried separately from the other defendants.  For all the reasons herein, petitioner's misjoinder claim and related ineffective assistance of counsel claim fail.

II.    Sufficiency of the Evidence for Rape in Concert

Petitioner claims that insufficient evidence supports his convictions for forcible rape in concert (counts 28, 29, and 30).  These counts were based on Narayan's rape of Jennifer, during which he penetrated her at least three times.  In particular, petitioner argues that the offenses were not proven because the rapes were not committed by actual force or violence, but rather, only by antecedent threats or fear.

On habeas corpus review, sufficient evidence supports a conviction so long as, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v.*

14

*Virginia*, 443 U.S. 307, 319 (1979); s*ee also Prantil v. California*, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam).  As stated by the United States Court of Appeals for the First Circuit, the focus under *Jackson* is not the correctness, but rather, the reasonableness of the state judgement. *See Hurtado v. Tucker*, 245 F.3d 7, 19 (1st Cir. 2001).

The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Davis v. Woodford*, 384 F.3d 628, 639 (9th Cir. 2004) (*quoting Jackson*, 443 U.S. at 319.)  The dispositive question is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."  *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (*quoting Jackson*, 443 U.S. at 318).

Petitioner's jury was instructed, regarding the rape in concert counts against him:

> Every person who voluntarily acting in concert with another person by force or violence and against the will of the victim personally or by aiding and abetting another person commits the crime of rape as defined in these instructions is guilty of the crime of rape by acting in concert, in violation of Penal Code Section 264.1.

> The phrase acting in concert means two or more persons acting together in a group crime and includes not only those who personally engage in the act constituting a crime, but also those who aid and abet in accomplishing it.  To establish that a defendant voluntarily acted in concert with another person it is not necessary to prove that there was any prearrangement, planning or scheme.

> Against the will of the victim means without the consent of the alleged victim.

> It is not necessary that the person who aids and abets the perpetrator have physical contact with the victim.

> In order to prove this crime each of the following elements must be proved:

> One, a person committed a crime of rape;

> Two, that person did so while voluntarily acting in concert with another person;

> And Three, the person – the defendant personally or by aiding and abetting another person committed the rape by force or violence and against the will of the alleged victim.

1   (RT at 6287-88.)

2          On direct review, the court of appeal explained that the force necessary to commit

3   rape in concert under section 264.1 of the California Penal Code "is no greater than the force

4   necessary to commit forcible rape within the meaning of Penal Code section 261, subdivision

5   (a)(2)." *People v. Deo*, *supra*, at 29.   Under California law, "[t]he gravamen of the crime of

6   forcible rape is a sexual penetration accomplished against the victim's will by means of force,

7   violence, duress, menace, or fear of immediate and unlawful bodily injury." *Id*. at 30.   The jury

8   in a forcible rape prosecution determines "whether the use of such force served to overcome the

9   will of the victim to thwart or resist the attack, not whether the use of such force physically

10  facilitated sexual penetration or prevented the victim from physically resisting her attacker." *Id*.

11  The relevant question is whether the defendant used force sufficient to accomplish intercourse

12  with the victim against her will, not whether the force was sufficient to overcome her physical

13  strength and ability to resist." *Id*.

14         The court of appeal went on to analyze this claim as follows:

15         The evidence here was sufficient to establish force sufficient to
           overcome Jennifer's will. Jennifer testified that after her supposed
16         customer drove to Savings Place, three men approached the car,
           two with knives. When she screamed, they put a knife to her face
17         and told her to do what they said. Jennifer was frightened and
           begged them not to kill her. When the car stopped, two men
18         walked her to another car where the rapes occurred. One man held
           her arm tightly and told her not to try to run or try anything stupid
19         because they had guns and would kill her. She replied she would
           not try anything; she just wanted to get out alive and he did not
20         need to hold her so hard. The abduction at knifepoint, followed by
           threats delivered with physical force on her arm, were sufficient to
21         show Jennifer's will to thwart or resist the attack was overcome.
           (*People v. Griffin, supra,* 33 Cal.4th at p. 1027, 16 Cal.Rptr.3d
22         891, 94 P.3d 1089.)

23  *People v. Deo*, *supra*, at 30.

24         This court is bound by the state court of appeal's interpretation and application of

25  the elements of forcible rape and rape in concert under California law.  *See Bradshaw v. Richey*,

26  546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on

1   direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus").

2   Applying the elements of the rape in concert as set forth by the court of appeal, the record

3   evidence reasonably supports a finding of guilt.  In particular, Jennifer testified that the

4   perpetrators used force, whether by violence, menace, duress, fear, or a combination thereof,

5   sufficient to accomplish intercourse against her will.  Viewing this evidence in the light most

6   favorable to the prosecution, any rational trier of fact could have found the essential elements of

7   the crime beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319.  Petitioner is not entitled to

8   relief for his claim of insufficient evidence on the rape in concert convictions.

9           III.    Admission of Photographs

10          At trial, the prosecution sought to admit various photographs seized from

11  codefendant Kumar's vehicle.  The trial court excluded some photographs as overly prejudicial,

12  including those depicting the defendants "throwing what appeared to be gang signs."  (RT at

13  5334.)  Nine other photographs were admitted into evidence over objections from some of the

14  defendants.  (RT at 5346-47.)  Depicted in the admitted photographs were petitioner and some of

15  his codefendants, either singularly or together, sometimes in possession of a black gun.[4]  The trial

16  court ruled the photographs admissible under section 352 of the California Code of Evidence to

17  show association of the defendants and possession of a gun.

18          Petitioner was depicted in only one of the photographs, "singularly in front of a

19  wall [with] a mirror to his right."  (RT at 5340.)  Counsel argued that this particular photograph

20  had no relevance because it did not show association with other defendants or possession of a

21  gun.

22          On direct review, the California Court of Appeal held that all the photographs

23  were properly admitted under state law.  Petitioner contends here that the erroneous admission of

24  ────────────────

25          [4] In one photograph, Kumar is pointing the gun at his head and in another he is holding
      the gun and a bottle of beer while smoking a cigarette.  One shows Narayan near a gun and
      another shows an unidentified man pointing the gun at Naryan's head, with Deo nearby.  *People*
26  *v. Deo*, *supra*, at 33.

1    the photographs violated his right to due process.

2           To any extent petitioner contends that the photographs should have been excluded

3    pursuant to section 352 of the California Evidence Code or that they were otherwise inadmissible

4    under state evidentiary law, the claim fails because habeas corpus will not lie to correct errors in

5    the interpretation or application of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991);

6    *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995) ("The admission of evidence does not

7    provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of

8    due process.") (citing *Estelle*, 502 U.S. at 67-68).

9           With respect to the due process claim, the United States Supreme Court has held

10   that habeas corpus relief should be granted where constitutional errors have rendered the trial

11   fundamentally unfair. *Williams,* 529 U.S. at 375.  No Supreme Court precedent has made clear,

12   however, that admission of irrelevant or overly prejudicial evidence can constitute a due process

13   violation warranting habeas corpus relief. *See Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th

14   Cir. 2009) ("The Supreme Court has made very few rulings regarding the admission of evidence

15   as a violation of due process. Although the Court has been clear that a writ should be issued

16   when constitutional errors have rendered the trial fundamentally unfair [ ], it has not yet made a

17   clear ruling that admission of irrelevant or overly prejudicial evidence constitutes a due process

18   violation sufficient to warrant issuance of the writ." (citation omitted)).

19          Even assuming that the improper admission of evidence under some

20   circumstances rises to the level of a due process violation warranting relief under the AEDPA,

21   this is not such a case.  Petitioner's claim would fail even under Ninth Circuit precedent,

22   pursuant to which an evidentiary ruling renders a trial so "fundamentally unfair" as to violate due

23   process only if "there are *no* permissible inferences the jury may draw from the evidence."

24   *Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998) (emphasis in original) (quoting *Jammal

25   v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991)); *see also*, *Boyde v. Brown*, 404 F.3d 1159,

26   1172 (9th Cir. 2005) ("A habeas petitioner bears a heavy burden in showing a due process

1  violation based on an evidentiary decision.").  In this case, the photographs were admitted to

2  show association of the defendants and possession of a gun by at least one of the defendants.

3  Even though the only admitted photograph of petitioner showed him alone without a weapon, it

4  was found in Kumar's vehicle together with the photographs of his codefendants.  From the

5  challenged evidence, a reasonable jury could have drawn permissible inferences that petitioner

6  associated with his codefendants prior to the attack on Jennifer, and also that codefendant

7  Naryan, also charged in the counts involving Jennifer, had previously possessed a gun.  This was

8  relevant because various firearm enhancements were alleged in the counts involving Jennifer,

9  and because Jennifer testified that the men who kidnapped and assaulted her told her that they

10 had guns (RT at 2920, 2936) and that she would be killed if she tried to run away.  (RT at 2936,

11 2948.)

12        Moreover, the photographs were not particularly prejudicial to petitioner's

13 defense; none of them showed him in the presence of a gun, and those in which the defendants

14 were displaying what appeared to be gang signs were excluded.  Although some of the

15 photographs showed petitioner's codefendants with a gun, in the context of the allegations at

16 trial, photographs showing them merely in the possession of a gun was not unduly prejudicial.

17 Admission of the photographs did not render petitioner's trial fundamentally unfair in violation

18 of due process.  *See Estelle*, 502 U.S. at 67-68.

19        IV.    Prosecutorial Misconduct

20        As previously set forth, petitioner argued consent as a defense.  In closing

21 argument, petitioner's counsel questioned Jennifer's refusal to seek medical treatment and

22 posited several reasons why she might have fabricated, exaggerated, or not accurately recalled the

23 events of the night in question.  In particular, counsel pointed out Jennifer's testimony that she

24 was formerly addicted to crack cocaine, that she had smoked crack cocaine at some point that

25 day, and that she had some memory deficit problems.  (RT at 6615-6617.)  Counsel argued that

26 Jennifer lied about being kidnapped and raped because she had consensually traded sex for drugs,

1   and needed to explain to her boyfriend why she returned home without any money.  (RT at 6647-

2   49.)

3              In rebuttal, the prosecutor agreed that Jennifer was acting as a prostitute that night,

4   but argued in support of her credibility.  First, he argued that because of her status and

5   outstanding warrants she would not want any contact with the police and would not call them

6   unless she had actually been raped.  The prosecutor further argued that the similar charged

7   attacks tended to show that Jennifer did not engage in consensual prostitution that night:

> Common sense.  Listen to what happened in this case as far as
> what Jennifer S testified to.  She testified to being picked up on
> Stockton Boulevard by one person, brought to Savings Place where
> three additional males then came out from the bushes, and then she
> gets kidnapped, ultimately is raped.  Doesn't that sound an awful
> lot like the other rapes that have been happening in this case?
>
> So here's a woman who made up a rape, right, makes it up for no
> apparent reason, and it just happens to be the same thing that's
> been happening out there since October of 2000 [the date of the
> first charged offenses].  The same old thing.

14  (RT at 6658.)  There was no objection to this argument.

15             Petitioner contends the prosecutor's argument was improper because the evidence

16  relating to the counts in which he was not charged was not admissible against him.  Although

17  petitioner's counsel did not object to this portion of the prosecutor's argument, petitioner claims

18  that the lack of objection does not bar this claim because the misconduct was "incurably

19  prejudicial."  In the alternative, he asserts that if an objection was required, counsel rendered

20  ineffective assistance in failing to object.

21             On direct review, the California Court of Appeal held that this part of the

22  prosecutor's argument, "while persuasive, violated the court order to use evidence only against

23  the defendants charged in the applicable count."  *People v. Deo*, *supra*, at 77-78.  The court of

24  appeal further found, however, that petitioner was not prejudiced by the prosecutor's argument:

> ...Singh contends this improper argument was "the straw that broke
> the camel's back."  We disagree.  While we recognize that the
> number of victims with similar stories bolstered the credibility of

20

each, we conclude it was not reasonably probable that a result more
favorable to Singh would have been reached without this argument.
The prosecutor gave a strong, valid reason to accept Jennifer's
story of rape and her version of events was corroborated by
forensic evidence. Absent any evidence to support it, Singh's
defense of consent was not compelling. For the reasons set forth
above in the discussion of Singh's motion to sever, we conclude
Singh was not prejudiced by the prosecutor's misconduct.

*People v. Deo*, *supra*, at 35.

A prosecutor's "[i]mproper argument does not, per se, violate a defendant's constitutional rights." *Jeffries v. Blodgett,* 5 F.3d 1180, 1191 (1993) (citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) and *Campbell v. Kincheloe*, 829 F.2d 1453, 1457 (9th Cir. 1987), cert. denied, 488 U.S. 948 (1988)).  On habeas corpus review, the narrow standard of due process applies.  *Darden*, 477 U.S. at 181.  "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  [A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by doing so can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Young*, 470 U.S. 1, 11 (1985); *see also Smith v. Phillips*, 455 U.S. 209, 219 (1983) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor").

Factors to be considered in determining whether habeas corpus relief is warranted include whether the prosecutor manipulated or misstated the evidence; whether his comments implicated other specific rights of the accused; whether the objectionable content was invited or provoked by defense counsel's argument; whether the trial court admonished the jurors; and the weight of the evidence against the defendant.  *Darden*, 477 U.S. at 181-82.  Relief is limited to cases in which the petitioner can establish that the misconduct resulted in actual prejudice.  *See Johnson v. Sublett*, 63 F.3d 926, 930 (1995) (citing *Brecht v. Abrahamson*, 507 U.S. 619,

637-38).  In other words, prosecutorial misconduct in violation of due process warrants habeas corpus relief only if it had a "substantial and injurious effect or influence in determining the jury's verdict."  *Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004) (applying *Brecht's* "harmless error" test in evaluating a claim of prosecutorial misconduct on habeas corpus).

In this case, even assuming for purposes of this opinion that the prosecutor's argument was improper, relief is precluded.  The improper argument did not infect petitioner's trial with such unfairness so as to make the resulting conviction a denial of due process, and it did not have substantial and injurious effect or influence in determining the jury's verdict.  First, the prosecutor's improper comment was brief and isolated within a lengthy closing argument as opposed to being repeated and extensive.  *See Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995) (petitioner not entitled to habeas corpus relief based on a single improper comment by the prosecutor regarding his own belief of a witness's veracity); *Burton v. Renico*, 391 F.3d 764, 782 (6th Cir. 2004) (isolated improper comment regarding presumption of innocence did not render trial so unfair as to violate defendant's due process rights).

Although the jury was not admonished immediately following the improper argument due to counsel's failure to object, the jury was properly instructed with CALJIC No. 2.07 regarding the limited use of evidence admitted against some but not all of the defendants:

> Evidence has been admitted against one or more defendants, and not admitted against the others.  At the time this evidence was admitted you were instructed that it could not be considered by you against the other defendants.  Do not consider this evidence as against the other defendants.

(RT at 6205.)  It is presumed that the jury followed this instruction.  *See Greer v. Miller*, 483 U.S. 756, 767 n.8 (1987) (courts "normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it unless there is an 'overwhelming probability' that the jury will be unable to follow the instructions...").

Finally, and most importantly, for the reasons already discussed in claim I, supra, the evidence demonstrating petitioner's guilt sufficiently overwhelmed any potential prejudice

1  from the prosecutor's brief and isolated improper argument.  Notably, there was a lack of

2  evidentiary support for petitioner's defense theory of the case that Jennifer consented to the sex

3  acts that took place.

4          For these same reasons, petitioner's alternative argument of ineffective assistance

5  of counsel likewise fails.  There simply is no reasonable probability that petitioner would have

6  obtained a more favorable outcome had counsel objected and the jury been immediate

7  admonished regarding the prosecutor's improper argument.  *See Strickland*, 466 U.S. at 690.

8      V.      CALJIC No. 10.01

9          The jury was instructed with CALJIC No. 10.01, in relevant part, as follows:

10         The phrase acting in concert means two or more persons acting
           together in a group crime and includes not only those who
11         personally engage in the act constituting the crime but also those
           who aid and abet a person in accomplishing it.  To establish that a
12         defendant voluntarily acted in concert with another person, it is not
           necessary to prove there was any prearrangement, planning, or
13         scheme.

14  (RT at 6287.)  Petitioner claims that this instruction created a mandatory presumption in

15  violation of his right to due process.  Petitioner argues that the jury was improperly directed to

16  make an in concert finding if it found that petitioner was an aider and abettor of the sexual

17  offenses committed by others in this case.

18         The California Court of Appeal rejected this claim:

19         Defendants contend the trial court erred in instructing in the
           language of CALJIC No. 10.01 because that instruction told the
20         jury that an aider and abettor was also necessarily acting in concert.
           Singh argues that acting in concert "must require some coercive
21         participation proximate to the offense, not merely antecedent or
           incidental aiding or abetting." Singh further argues the instruction
22         improperly created an irrebuttable presumption or partially directed
           a verdict and violated due process. We reject these contentions.

23
           Penal Code section 264.1 provides increased punishment for one
24         who "voluntarily acting in concert with another person, by force or
           violence and against the will of the victim" commits any of certain
25         sex offenses "either personally or by aiding and abetting the other
           person."
26

23

> "The purpose behind the increased punishment provided for by the 'in concert' statute is to discourage 'gang type' sexual assaults. [Citation.] It also exhibits a legislative recognition that rape is even more reprehensible when committed by two or more persons. [Citation.] As its language indicates, the statute punishes persons acting in concert (together) who either personally commit the act or assist others in its commission. If both defendants 'acting together' each rape the victim, the 'in concert' clause has been satisfied, and there is no need to inquire whether one aided or abetted the other. Acting 'in concert' is not necessarily synonymous with 'aiding and abetting.'" (*People v. Jones* (1989) 212 Cal.App.3d 966, 969, 260 Cal.Rptr. 853.)

> Contrary to Singh's argument, acting in concert does not require participation or personal presence at the crime; aiding and abetting is sufficient. (*People v. Lopez* (1981) 116 Cal.App.3d 882, 888, 172 Cal.Rptr. 374.)

*People v. Deo, supra*, at 37.

To obtain federal habeas corpus relief based on errors in jury instructions, a petitioner must show that the "ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. at 72. There must also be "a reasonable likelihood that the jury has applied the challenged instruction in such a way that violates the Constitution." *Id*. (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)).

The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). A jury instruction creating a mandatory presumption, that is, one that requires jurors to find a presumed fact if the state proves another fact, violates due process. *Carella v. California*, 491 U.S. 263, 265-66 (1989). Such an error is subject to harmless error review. Relief is available on federal habeas corpus for an unconstitutional jury instruction only if it had a substantial and injurious effect or influence in determining the jury's verdict. *See Hanna v. Riveland*, 87 F.3d 1034, 1039 (9th Cir. 1996) (applying *Brecht* harmless error review to instructional error on habeas corpus review).

Petitioner fails to demonstrate a due process violation or that the state court's rejection of his claim was contrary to, or an unreasonable application of clearly established Supreme Court precedent. Petitioner cites no applicable federal authority in support of his

1  contention that CALJIC No. 10.01 creates a mandatory presumption directing an in concert

2  finding merely because the jury finds aiding and abetting.  In any event, the court of appeal

3  explained that, under state law, evidence demonstrating aiding and abetting is sufficient to show

4  acting in concert and no personal participation is necessary.  Such a finding binds this court on

5  federal habeas corpus.  *Richey*, 546 U.S. at 76.

6          In any event, even if CALJIC No. 10.01 did contain a mandatory presumption that

7  violated due process, the error would have been harmless.  *See Hanna*, 87 F.3d at 1039.  Ample

8  record evidence allowed the jury to reasonably find that petitioner acted in concert with personal

9  participation in the rapes of Jennifer.  Her testimony demonstrated that petitioner was more than

10  an aider and abettor; he was personally present and facilitated the rapes by Naryan.  Petitioner

11  also personally participated in the forcible oral copulation of the victim.  Petitioner is not entitled

12  to relief based on the trial court's instruction with CALJIC No. 10.01.

13      **VI.   CALJIC No. 2.71.7**

14          The jury was instructed pursuant to CALJIC No. 2.71 regarding admissions as

15  follows:

16          An admission is a statement made by a particular defendant which
        does not by itself acknowledge his guilt of the crimes for which the
17          defendant is on trial, but which statement tends to prove his guilt
        when considered with the rest of the evidence.  You are the
18          exclusive judges as to whether any defendant made an admission
        and if so, whether that statement is true in whole or in part.
19          *Evidence of an oral admission of the defendant not made in court
        should be viewed with caution.*

20

21  (RT at 6211.)

22          Petitioner contends that the trial court erred by failing to further instruct, sua

23  sponte, with CALJIC No. 2.71.7.  CALJIC No. 2.71.7 provides:

24          Evidence has been received from which you may find that an oral
        statement of [intent] [plan] [motive] [design] was made by the
25          defendant before the offense with which [he] [she] is charged was
        committed.  It is for you to decide whether the statement was made
26          by [a][the] defendant.  Evidence of an oral statement ought to be

25

1    viewed with caution.

2    CALJIC No. 2.71.7.  Petitioner argues that the jury needed to know that it had to view critical

3    pre-offense statements with caution- "[t]his is especially true of the threats and demands for oral

4    sex which the prosecutor attributed to petitioner (the man who assertedly grabbed Jennifer's

5    arm)."

6           Petitioner fails to state a cognizable federal claim.  Petitioner relies entirely on

7    state case law to support his claim that the jury should have been instructed, sua sponte, with

8    CALJIC 2.71.7.  He does not allege a violation of his federal due process rights or any other

9    constitutional error.  In arguing that the error was not harmless, he cites a state law standard.

10   Because this claim of instructional error is based entirely on state law, it is not cognizable here.

11   *See*, *e.g.*, *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the

12   basis of a perceived error in state law.").

13        VII.    CALJIC No. 2.21.2

14           In another claim of instructional error, petitioner contends that his due process

15   rights were violated by the court's instruction with CALJIC No. 2.21.2 as follows:

16        A witness, who is willfully false in one material part of his or her
         testimony, is to be distrusted in others. You may reject the whole
17        testimony of a witness who willfully has testified falsely as to a
         material point, unless from all the evidence you believe the
18        probability of truth favors his or her testimony in other particulars.

19   CALJIC No. 2.21.2.  Petitioner argues that the "unnecessary probability reference" in this

20   instruction permitted jurors to resolve dispositive credibility questions by a preponderance of the

21   evidence standard rather than beyond a reasonable doubt, which in effect lessened the

22   prosecution's burden of proof.

23           On direct review, the California Court of Appeal denied this claim based on

24   authority of the California Supreme court, which has repeatedly rejected the contention.  *See*

25   *People v. Deo*, *supra*, at 38 (citing, *e.g.*, *People v. Cleveland*, 32 Cal.4th 704, 751 (2004).

26   /////

1   Petitioner fails to cite any authority demonstrating that CALJIC No. 2.21.2

2   unconstitutionally lessens the prosecution's burden of proof.  The Ninth Circuit has addressed

3   and rejected a constitutional due process challenge to CALJIC No. 2.21.2, although that

4   challenge was premised on a different argument.  *See Turner v. Calderon*, 281 F.3d 851, 856-66

5   (9th Cir. 2002) (declining to issue a certificate of appealability as to claim that instruction with

6   CALJIC 2.21.2 violates due process).

7   In any event, petitioner's jury was completely and properly instructed on the

8   applicable reasonable doubt burden of proof.  (*See* RT at 6268.)  There is no reasonable

9   probability that the jury convicted him only on "the probability of proof" as opposed to the

10  correct standard of "proof beyond a reasonable doubt."  *See Boyde*, 494 U.S. at 380.  Viewed in

11  context of all the instructions at trial, CALJIC No. 2.21.2 did not render petitioner's trial

12  fundamentally unfair in violation of due process.  *See Estelle*, 502 U.S. at 72.

13  **VIII.   Cumulative Error**

14  Petitioner contends that the cumulative effect of errors at trial deprived him of his

15  right to due process and a fair trial.  Presented with this claim, the California Court of Appeal

16  held:

17
18  > The only events that possibly infringed upon Singh's right to a fair
    > trial were counsel's failure to sever the trial and the one instance of
    > prosecutorial misconduct in referring to evidence of the counts in
19  > which Singh was not charged. We have analyzed these events
    > separately and found they were not prejudicial. Taking them
20  > together, we reach the same conclusion, based on the strength of
    > the case against Singh. We do not find Singh would have received
    > a result more favorable in the absence of the errors (*People v.*
21  > *Bunyard, supra,* 45 Cal.3d 1189, 1237, 249 Cal.Rptr. 71, 756 P.2d
    > 795), or that Singh suffered a miscarriage of justice (*People v. Hill*
22  > (1998) 17 Cal.4th 800, 844, 72 Cal.Rptr.2d 656, 952 P.2d 673).
    > Cumulative error does not require reversal.

23

24  *People v. Deo*, *supra*, at 40.

25  In some cases, the combined effect of multiple trial errors may give rise to a due

26  process violation if the trial was rendered fundamentally unfair, even where each error

27

1   considered individually would not require reversal.  *Parle v. Runnels*, 505 F.3d 922, 927 (9th.

2   Cir. 2007) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) and *Chambers v.*

3   *Mississippi*, 410 U.S. 284, 290 (1973)).  The fundamental question in determining whether the

4   combined effect of trial errors violated a defendant's due process rights is whether the errors

5   rendered the criminal defense 'far less persuasive,' *Chambers*, 410 U.S. at 294, and thereby had a

6   'substantial and injurious effect or influence' on the jury's verdict.  *Parle*, 505 F.3d at 927

7   (quoting *Brecht*, 507 U.S. at 637).

8           "[C]umulative-error analysis should evaluate only the effect of matters determined

9   to be error, not the cumulative effect of non-errors."  *United States v. Rivera*, 900 F.2d 1462,

10  1471 (9th Cir. 1990).  If the evidence of guilt is otherwise overwhelming, the errors are

11  considered harmless and the conviction will generally be affirmed.  *Parle*, 505 F.3d at 928.  On

12  the other hand, if the government's case on a critical element is weak, the combined effect of the

13  errors is more likely to be prejudicial.  *Id.*

14          Based on these standards, the court of appeal's denial of petitioner's claim of

15  cumulative error was not an objectively unreasonable application of Supreme Court precedent.

16  The possible trial errors cited by the state court are unlike those in *Chambers* and *Parle*, in which

17  the Supreme Court and Ninth Circuit, respectively, found that cumulative error warranted relief.

18          In this case, to the extent there were any errors at trial, they were found not to

19  have violated petitioner's constitutional rights.  Importantly, no errors interfered with his right to

20  present a defense.  *C.f. Chambers*, 410 U.S. at 294 (due process violation found where defense

21  was rendered "far less persuasive than it might have been had [Chambers] been given an

22  opportunity to subject [a witness who had made an out of court confession to the crime with

23  which Chambers was charged] to cross-examination); *c.f. also Parle*, 505 F.3d at 930-33

24  (defense rendered "far less persuasive" by trial court's errors that "went to the heart of the central

25  issue in the case"- the petitioner's state of mind at the time of the crime- including erroneous

26  admission of damaging testimony from the petitioner's psychiatrist, combined with the erroneous

1  exclusion of testimony from petitioner's expert medical witness and the prosecutor's improper

2  closing argument, which cumulatively violated due process).

3          Moreover, the evidence against petitioner was compelling, as discussed elsewhere

4  herein.  Under these circumstances, the cumulative effect of the two possible trial errors could

5  not have resulted in prejudice sufficient to overturn petitioner's convictions.

6      IX.    Sentencing for Rape in Concert

7          Petitioner claims that the trial court erred in imposing consecutive seven year

8  terms for the two counts of forcible oral copulation in concert (counts 31 and 32).

9          Pursuant to California Penal Code section 667.6(d), a trial court must impose full

10 consecutive terms for specified sex offenses, including forcible oral copulation, "if the crimes

11 involve separate victims or involve the same victim on separate occasions."  In determining

12 whether crimes against a single victim were committed on separate occasions, the question is

13 whether "between the commission of one sex crime and another, the defendant had a reasonable

14 opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive

15 behavior."  Cal. Penal Code § 667.6(d).[5]  "[T]he duration of time between crimes [is not], in and

16 of itself, determinative on the issue of whether the crimes in question occurred on separate

17 occasions."  *Id.*

18         Citing section 667.6 of the California Penal Code, petitioner contends that

19 consecutive sentencing was improper.  In particular, petitioner argues that he was a perpetrator in

20 only one of the acts, and no evidence showed that he had an opportunity to reflect before his

21 codefendant committed the second act.

22         On direct appeal, the California Court of Appeal summarized the evidence as

23 follows: "After Narayan raped Jennifer, Singh forced her to orally copulate him in the car.  Then

24 Deo got in the front seat and had Jennifer join him.  He forced Jennifer to orally copulate him

25 _____

26    [5] Otherwise, California law generally provides for sentencing of consecutive terms at one-
third the prescribed mid-level term for the crime.  *See* Cal. Penal Code §1170.1(a).

1   and she spat the ejaculate on the floor of the car." *People v. Deo*, *supra*, at 40.  The court of

2   appeal went on to reject petitioner's claim of sentencing error:

3           In *People v. McPherson* (2001) 86 Cal.App.4th 527, at page 530,
            the court reached "the virtually self-evident conclusion that
4           discrete sexual assaults on the same victim occur on 'separate
            occasions' as that term is used in section 667.6, subdivision(d)
5           when the assaults are personally committed by different persons
            even if one follows the other in rapid succession."  In sentencing
6           Singh, the trial court followed *McPherson* and stated that in
            concert convictions where different perpetrators commit sexual
7           offenses against the same victim are deemed section 667.6,
            subdivision (d) crimes.  There was no error in imposing full term
8           consecutive sentences.

9   *People v. Deo*, *supra*, at 40.

10          Again, federal habeas corpus relief is not available for alleged errors in the

11  interpretation or application of state law.  *Richey*, 546 U.S. at 76.  Petitioner cites no federal

12  precedent in support of this claim.  The issue whether section 667.6(d) applied to counts 31 and

13  32 is solely an issue of state law that was properly resolved on state law grounds.

14          X.     Sentencing for Rape in Concert and the Sixth Amendment

15          In a related claim, petitioner contends that consecutive sentencing on the two rape

16  in concert convictions violated the rule announced by the Supreme Court in *Blakely v.*

17  *Washington*, 542 U.S. 296 (2004).  "Other than the fact of a prior conviction, any fact that

18  increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to

19  a jury, and proved beyond a reasonable doubt."  *Blakely*, 542 U.S. at 301 (citing *Apprendi\ v.*

20  *New Jersey*, 530 U.S. 466, 490 (2000).  "[T]he 'statutory maximum' for *Apprendi* purposes is the

21  maximum sentence a judge may impose solely on the basis of the facts reflected in the jury

22  verdict or admitted by the defendant."  *Id*. at 303-304.

23          To the extent petitioner argues in this claim that he was unconstitutionally

24  sentenced because a judge, rather than a jury, found that the forced oral copulation offenses

25  involved the same victim on separate occasions, his claim is foreclosed by the Supreme Court's

26  decision in *Oregon v. Ice*, 129 S.Ct. 711 (2009).  At issue in *Ice* was an Oregon statute which

                                              30

required a finding of certain facts about the charged sexual offenses before a judge could impose consecutive sentences. *Id*. at 715-16. Declining to extend *Apprendi* and *Blakely*, the Supreme Court held that the Sixth Amendment does not prohibit states from assigning to judges, rather than to juries, the finding of facts necessary to impose consecutive sentences for certain offenses. *Id*. at 718-19. The Court rejected the petitioner's argument that the Sixth Amendment right to jury is implicated where a state law allows predicate reasons to be found by judges to support the imposition of consecutive sentences. *Id*. at 718. Pursuant to the Supreme Court's holding in *Ice*, no relief is available for the trial court's consecutive sentencing of the two rape in concert convictions.

## XI.     Sentencing under Cal. Penal Code 667.61(d)(2)

Petitioner claims that his indeterminate prison sentence of twenty-five years to life pursuant to section 667.61(d)(2) violated his due process and equal protection rights because the same conduct is punishable by a lesser term under subdivision (e)(1) of the same statute.

On direct review, the state court of appeal described and rejected petitioner's claim as follows:

> Singh contends his due process and equal protection rights were violated by imposing a 25-year to life sentence on count 28, rape in concert, based on an aggravated kidnapping circumstance. (Pen.Code, § 667.61, subd. (d)(2).) He contends that because the aggravated kidnapping circumstance requires nothing more than that required for kidnapping to commit rape, which triggers a 15-year to life sentence, he should receive the lesser sentence. Because the statute expressly provides the harsher sentence should apply, we reject his contention.
>
> Singh challenges portions of the one strike law, which "sets forth an alternative and harsher sentencing scheme for certain enumerated sex crimes perpetrated by force." (*People v. Manchebo* (2003) 27 Cal.4th 735, 741, 117 Cal.Rptr.2d 550, 41 P.3d 556.) It provides a sentence of 25 years to life for one convicted of certain forcible sex offenses "under one or more of the circumstances specific in subdivision (d) or under two or more of the circumstances specified in subdivision (e)." (Pen.Code, § 667.61, subd. (a).) Singh's contention focuses on two kidnapping circumstances, one under subdivision (d) and one under subdivision (e).

Penal Code section 667.61, subdivision (d)(2) provides: "The defendant kidnapped the victim of the present offense and the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense in subdivision (c)." This is the "aggravated kidnapping circumstance." (*People v. Jones* (1997) 58 Cal.App.4th 693, 704, fn. 5, 68 Cal.Rptr.2d 506.) It subjects a defendant to a sentence of 25 years to life. (Pen.Code, § 667.61, subd. (a).)

In contrast, the "simple kidnapping circumstance" (*People v. Jones, supra,* 58 Cal.App.4th at p. 705, fn. 6, 68 Cal.Rptr.2d 506), subjects a defendant to a sentence of 15 years to life (Pen.Code, § 667.61, subd. (b)), unless there are two or more circumstances under subdivision (e). (Pen.Code, § 667.61, subd. (a).) The simple kidnapping circumstance provides: "Except as provided in paragraph (2) of subdivision (d), the defendant kidnapped the victim of the present offense in violation of Section 207, 209, or 209.5." (Pen.Code, § 667.61, subd. (e)(1).)

Penal Code section 209 is kidnapping for ransom or for robbery or a sex crime. The portion punishing kidnapping for robbery or a sex crime with a life sentence applies only "if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense." (Pen.Code, § 209, subd. (b)(2).) This "risk of harm" language is very similar to the aggravated kidnapping circumstance.

Singh contends that in this case there is no distinction between the simple kidnapping and aggravated kidnapping circumstances, both require an increased risk of harm, yet one imposes a more severe punishment than the other. He argues such arbitrary application, dependent on the prosecutor's charging discretion, violates both due process and equal protection.

Singh's argument fails because he overlooks the introductory language to the simple kidnapping circumstance. It begins, "Except as provided in paragraph (2) of subdivision (d)...." By this language, the Legislature recognized that in some cases the two kidnapping circumstances would be the same and chose the greater to apply. In this case, only the more severe punishment for the aggravated kidnapping circumstance applies and there is no violation of due process or equal protection.

*People v. Deo*, *supra*, at 42-43 (footnote omitted).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the law,' which is essentially a direction that all persons similarly situated should be treated equally." *City of*

1    *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).  Federal courts apply a

2    strong presumption that governmental classifications do not violate equal protection unless they

3    implicate a suspect class of persons or a fundamental interest.  *See City of New Orleans v. Dukes*,

4    427 U.S. 297, 303 (1976).  In the context of a sentencing statute, the Ninth Circuit has held that

5    to establish an equal protection violation, a habeas corpus petitioner must show that the statute is

6    actually applied unevenly to criminal defendants in general or that it was unevenly applied to

7    him.  *McQueary v. Blodgett*, 924 F.2d 829, 834-35 (9th Cir. 1991).  Sentencing schemes are

8    evaluated under the rational basis test, which asks whether the challenged legislation bears a

9    rational relationship to a permissible state objective.  *See Id*. at 835 n.7.  Since "the Constitution

10   does not require identical treatment," a mere demonstration of inequality or unequal results is not

11   enough to make a prima facie case; rather, "[t]here must be an allegation of invidiousness or

12   illegitimacy in the statutory scheme before a cognizable claim arises."  *Id*. at 835.

13          In evaluating due process claims arising from charging decisions, the Supreme

14   Court requires "exceptionally clear proof" before inferring an abuse of prosecutorial discretion.

15   *McCleskey v. Kemp*, 481 U.S. 279, 297 (1987); *see also United States v. Armstrong*, 517 U.S.

16   456, 463 (1996) (when a defendant contends that the prosecutor made a charging decision in

17   violation of the Constitution, the standard of proof "is a demanding one").

18          As the court of appeal explained, section 667.61(e)(1) of the California Penal

19   Code (aggravated kidnapping) explicitly does not apply where there is also a finding of

20   aggravated kidnapping pursuant to subdivision (d)(2) ("risk of harm" kidnapping).  Such a

21   finding binds this court.  *Richey*, 546 U.S. at 76.  Moreover, the statutory scheme bears a rational

22   relationship to a permissible state objective: punishing more harshly those kidnappings that

23   involve movement of the victim and thus a corresponding greater risk of harm. This is certainly

24   not a case in which "exceptionally clear proof" demonstrates that the prosecutor abused his

25   discretion in alleging a kidnapping circumstance under section 667.61(d)(2).  Accordingly, the

26   court of appeal's rejection of petitioner's equal protection and due process claims premised on

1     the application of section 667.61(d)(2) is not contrary to, or an unreasonable application of

2     clearly established Supreme Court precedent.

3          XII.     Disparate Treatment of Oral Copulation and Rape

4          In a somewhat confusing claim, petitioner contends that his constitutional rights to

5     due process of law and equal protection were violated because of a disparity in treatment of

6     offenders under the statutes setting forth the offense of rape in concert and the offense of oral

7     copulation in concert.  Specifically, petitioner asserts "No good reason, much less a compelling

8     one, is apparent for elevating the punishment for oral copulation committed by fear or threats, but

9     not elevating the punishment for a completed rape based on fear or threats."

10          On direct review, the California Court of Appeal explained and rejected this claim

11     as follows:

12       Singh, Narayan and Deo contend their equal protection rights were
violated because the means of committing rape in concert and oral

13       copulation in concert are not identical. Rape in concert is
committed "by force or violence and against the will of the

14       victim." (Pen.Code, § 264.1.) Oral copulation in concert may be
"accomplished against the victim's will by means of force or fear

15       of immediate and unlawful bodily injury on the victim or another
person." (Pen.Code, § 288a, subd. (d)(1).) Singh, Narayan and Deo

16       contend only oral copulation in concert may be accomplished by
fear and there is no rational basis for elevating oral copulation in

17       concert by fear over rape in concert by fear.

18       We recognize that treating sex crimes based on the act of oral
copulation more severely than sex crimes based on the act of

19       sexual intercourse may raise equal protection issues. (See *People v.
Hofsheier* (2006) 37 Cal.4th 1185, 39 Cal.Rptr.3d 821, 129 P.3d 29

20       [mandatory sex registration for one convicted of oral copulation
with a minor violated equal protection where no mandatory

21       registration requirement for unlawful sexual intercourse with a
minor].) That situation is not present here. As explained above in

22       part IV, the force or violence required for rape in concert is simply
the force necessary to overcome the victim's will; it may be

23       accomplished by fear. (*People v. Griffin, supra,* 33 Cal.4th 1015,
1027-1028, 16 Cal.Rptr.3d 891, 94 P.3d 1089; *People v. Mom,*

24       *supra,* 80 Cal.App.4th 1217, 1219, 96 Cal.Rptr.2d 172.) Here,
there was sufficient evidence of that degree of force as to all the in

25       concert crimes; in each case the victim's will was overcome by the
display of weapons, threats of force and harm, and acts of physical

26       force. Indeed, the prosecution made no distinction between the

> force necessary for oral copulation in concert and the force
> necessary for rape in concert. Narayan and Singh were not
> punished more severely for acts of oral copulation in concert that
> were less egregious than their acts of rape in concert. Their equal
> protection argument fails.

People v. Deo 2008 WL 2404210, 43 (Cal.App. 3 Dist.) (Cal.App. 3 Dist.,2008)

As a threshold matter, petitioner cites no Supreme Court or other federal authority holding that a defendant's right to due process or equal protection can be violated based on the existence of different elements for similar crimes. A thorough search reveals no such precedent. The only federal case cited by petitioner in support of this claim is *City of Cleburne*, 473 U.S. 432. As previously set forth, *Cleburne* stands for the general proposition that "all person similarly situated should be treated equally." *Id*. at 439. It appears that the high court has not addressed disparities between criminal statutes in an equal protection or due process context. With no clearly established Supreme Court authority to support his claim, petitioner cannot obtain relief under the AEDPA. *See*, *e.g.*, *Carey v. Musladin*, 549 U.S. 70, 76 (2006).

Even assuming, for purposes of this discussion, that petitioner's claim can be properly analyzed under the general rule of *Cleburne*, the claim still fails. The Supreme Court has explained that "[t]he more general the [constitutional] rule, "the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). Here, the rule of *Cleburne* is highly general, and the state court's decision is entitled to great deference. *See Id*.

In denying petitioner's claim, the court of appeal explained that, for all practical purposes, the force required to commit oral copulation in concert is the same as the force required to commit rape in concert. In other words, although oral copulation in concert (but not rape in concert) can explicitly be accomplished by fear under the applicable statute, elsewhere state law provides that the force required for rape in concert "is simply the force necessary to overcome the victim's will; *it may be accomplished by fear*." *People v. Deo*, *supra*, at 43. The court also explained that the prosecutor made no distinction between the amount of force used by

1   petitioner to commit both sets of crimes, and that petitioner was not punished any more severely

2   for his crimes of oral copulation in concert than for his crimes of rape in concert.  The court of

3   appeal's determination in this regard was not an unreasonable application of the general standard

4   for equal protection as announced in *Cleburne*.  No relief is available for this claim.

5       XIII.   Cruel and Unusual Punishment

6           Petitioner claims that his sentence of thirty nine years to life in state prison is cruel

7   and unusual punishment under the Eighth Amendment based on his lack of a criminal record,

8   relative youth, and because he personally committed only one of the six crimes of which he was

9   convicted.

10          On direct review, the California Court of Appeal rejected petitioner's cruel and

11  unusual punishment claim.  It appears that the state court analyzed petitioner's claim solely under

12  the California standard for cruel and unusual punishment.[6]  The court of appeal noted that

13  petitioner's lengthy sentence was due largely to the application of provisions of the penal code

14  reflecting the legislative determination to punish violent sex offenders harshly, and that similar

15  sentences have been upheld against claims of cruel and unusual punishment.  *People v. Deo*,

16  *supra*, at 45.

17           To the extent petitioner's claim cruel and unusual punishment claim is premised

18  on the California Constitution, it fails, since federal habeas corpus relief will not lie to correct an

19  alleged error in the interpretation or application of state law.  *See Estelle*, 502 U.S. at 67-68.

20          Outside of the capital punishment context, the Eighth Amendment of the United

21  States Constitution "forbids only extreme sentences that are grossly disproportionate to the

22  crime." *Graham v. Florida*, 130 S. Ct. 2011, 2021 (2010) (*quoting Harmelin v. Michigan*, 501

23  U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in judgment)).  The

24  _____

25          [6]  While the Eighth Amendment prohibits "cruel *and* unusual punishment," the California
    Constitution prohibits "cruel *or* unusual punishment."  *See People v. Weddle*, 1 Cal.App.4th
26  1190, 1196 n.5 (1991).

1   United States Supreme Court held that the gross disproportionality principle is the only relevant

2   clearly established law applicable to an Eighth Amendment challenge to a sentence under section

3   2254.  *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003).  The threshold for an inference of gross

4   disproportionality is high.  Generally, so long as the sentence imposed by the state court does not

5   exceed statutory maximums, it will not be considered cruel and unusual punishment under the

6   Eighth Amendment.  *United States v. McDougherty*, 902 F.2d 569, 576 (9th Cir. 1990); *United*

7   *States v. Mejia-Mesa*, 153 F.3d 925, 930 (9th Cir. 1998) ("punishment within legislatively

8   mandated guidelines is presumptively valid").

9           The United States Supreme Court has upheld a term of life with the possibility of

10   parole for the offense of theft of $120.75 by false pretenses, under a recidivism statute which

11   accounted for the defendant's two prior offenses of fraudulent use of a credit card and passing a

12   forged check in the amount of $28.36.  *Rummel v. Estelle*, 445 U.S. 263, 265, 285 (1980).  This

13   life sentence did not offend the gross proportionality principle of the Eighth Amendment.  *See Id*.

14   Likewise, in *Harmelin v. Michigan*, the Court held that a term of life in prison without the

15   possibility of parole was not disproportionate to the crime of possession of 672 grams of cocaine.

16   501 U.S. 957, 1009 (1991).  In *Lockyer v. Andrade*, 538 U.S. 63 (2003), the Court upheld a

17   decision of the California Court of Appeal affirming a sentence of two consecutive terms of 25

18   years to life in prison for a "third strike" conviction of theft of $150 worth of video tapes.  Such a

19   sentence was not contrary to or an unreasonable application of the gross disproportionality

20   principle.  *Id*. at 73-74.

21           Petitioner's attempt to distinguish his convictions, personal circumstances

22   including lack of prior recidivism, and resulting sentence from the Supreme Court's applicable

23   precedent fails, as his offenses were more actually severe than those discussed.  As the California

24   Court of Appeal noted, petitioner understates the seriousness and danger to society of his crimes:

25   he was convicted of five forcible sex offenses in concert, all with an aggravated kidnapping

26   circumstance.  *People v. Deo*, *supra*, at 46.  His is not "the rare case in which a threshold

1   comparison of the crime committed and the sentence imposed leads to inference of gross

2   disproportionality."  *Harmelin*, 501 U.S. at 1005; *see also Eckert v. Tansy*, 936 F.2d 444, 448-50

3   (9th Cir. 1991) (two consecutive sentences for first degree kidnapping with use of a weapon

4   found constitutionally permissible).  No relief is available for this claim.

5        XIV.   Ineffective Assistance of Appellate Counsel

6        Petitioner claims that appellate counsel, attorney Shipp, rendered ineffective

7   assistance.  After trial, Shipp filed a direct appeal of petitioner's convictions.  Petitioner contends

8   that Shipp should have also filed a state habeas corpus petition in conjunction with that appeal,

9   alleging deficient performance by trial counsel, attorney Greiner.  Although Shipp did claim on

10  direct appeal that Greiner's performance was deficient with respect to the severance issue,

11  petitioner argues that a more favorable outcome would have resulted from a habeas corpus

12  petition raising matters outside the record.[7]  Petitioner also complains that Shipp failed to

13  sufficiently investigate Greiner's reason for declining the trial court's offer to sever petitioner's

14  case from that of his codefendants, and that he retained a DNA expert, a move that was

15  inconsistent with the fact that petitioner's defense one of consent.

16       Petitioner first raised his claim of ineffective assistance of appellate counsel in a

17  habeas corpus petition to the Sacramento County Superior Court.  The superior court's denial is

18  the last reasoned state court opinion applicable to this claim.

19       To the extent petitioner's claim is based solely on Shipp's failure to file a habeas

20  corpus petition, it is foreclosed by 28 U.S.C. § 2254(i).  Section 2254(i) provides: "The

21  ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction

22  proceedings shall not be a ground for relief in a proceeding arising under section 2254."  This

23  provision reflects Supreme Court case law that a criminal defendant has no constitutional right to

24

25        [7] California courts have consistently held that ineffective assistance of counsel claims
26  based on matters outside the record on direct appeal are more appropriately raised in a habeas
    corpus proceeding.  *See, e.g.*, *People v. Mendoza Tello*, 15 Cal.4th 264, 266-267 (1997).

1  counsel for purposes of collaterally attacking a conviction.  "There is no constitutional right to an

2  attorney in state post-conviction proceedings."  *Coleman v. Thompson*, 501 U.S. 722, 752(1991)

3  (citing *Pennsylvania v. Finley*, 481 U.S. 551 (1987) and *Murray v. Giarratano*, 492 U.S. 1

4  (1989)).  "Consequently, a petitioner cannot claim constitutionally ineffective assistance of

5  counsel in such proceedings."  *Id*. (citing *Wainwright v. Torna*, 455 U.S. 585 (1982) (where there

6  is no constitutional right to counsel there can be no deprivation of effective assistance).  Even if

7  Shipp erred in not filing a habeas corpus petition, that error was not constitutionally ineffective.

8          To any extent petitioner's claim is based on Shipp's alleged ineffectiveness in his

9  handling of the claim of Greiner's ineffective assistance on direct appeal, the claim is also

10 without merit.  Petitioner fails to demonstrate that counsel's performance fell below an objective

11 standard of reasonableness, or that he suffered prejudice.  *Strickland*, 466 U.S. at 690; *see also*

12 *Smith v. Murray*, 477 U.S. 527, 535-36 (1986) (applying *Strickland* to claim of attorney error on

13 appeal).

14          Rather than demonstrating deficient performance, the documents submitted by

15 petitioner in support of this claim show that Shipp diligently pursued a claim of ineffective

16 assistance of counsel in connection with the severance motion.  It appears that Shipp wrote

17 multiple letters to Greiner and drafted two different declarations for Greiner to sign in support of

18 the ineffective assistance of counsel claim.  Shipp indicated in a letter to petitioner that he had

19 planned to use Greiner's declaration to support an ineffective assistance of counsel claim in a

20 state habeas corpus petition.  When Greiner declined to sign the drafted declarations, Shipp

21 apparently decided to raise this claim on direct appeal.  On direct appeal, the claim was denied

22 for the reasons set forth in section I, *supra*.  Petitioner fails to allege what Shipp should have

23 done differently in relation to the severance issue and this portion of the ineffective assistance of

24 counsel claim filed on direct appeal.

25          Petitioner suggests that Shipp was ineffective for failing to challenge Greiner's

26 representation on the ground that he unnecessarily retained a DNA expert when petitioner's

strongest defense was one of consent.  Petitioner does not explain, however, how the use of a DNA expert prevented him from mounting a more effective consent defense.  Conclusory allegations of counsel's ineffectiveness will not suffice for habeas corpus relief.  *See Boehme v. Maxwell*, 423 F.2d 1056, 1058 (9th Cir. 1970).

Petitioner also suggests that Shipp was ineffective for not "ask[ing] [Greiner] about his failure to request jury instructions on the consent theory."  This allegation is also conclusory and insufficient to demonstrate a basis for relief.

In sum, to the extent petitioner's claim of ineffective assistance of appellate counsel is cognizable, he has failed to demonstrate either deficient performance or prejudice.  The Sacramento County Superior Court's denial of this claim is therefore not contrary to, or an unreasonable application of the *Strickland* standard that applies to claims of ineffective assistance of counsel.

XV.   Ineffective Assistance of Trial Counsel

For his final ground, petitioner claims that trial counsel, attorney Greiner, rendered ineffective assistance at trial.  In particular, petitioner contends that Greiner's performance was deficient in the following ways: (1) regarding the severance issue; (2) in failing to object to improper rebuttal closing argument by the prosecutor; (3) in failing to request jury instructions on consent as a defense; and (4) in unnecessarily retaining DNA counsel when the defense was consent.  Issues (1) and (2) above have already been addressed herein, in subsection I(B) and section IV, respectively, where it was determined that ineffective assistance was not shown.  Accordingly only the issues of petitioner's consent defense and the DNA expert need be addressed.

Petitioner first raised his ineffective assistance of trial counsel claim in a habeas corpus petition filed in the Sacramento County Superior Court.  The superior court's denial is the last reasoned state court opinion applicable to this claim.  In denying the claim, the superior court held:

40

1    Petitioner first claims ineffective assistance of trial counsel... in
     that petitioner had a desired defense based on consent and instead
2    trial counsel sought funds for, hired, and presented a defense DNA
     expert to challenge the DNA evidence.
3
     Petitioner, however, fails to note that his trial counsel did in fact
4    raise consent as an affirmative defense. Indeed, the Third District
     Court of Appeal noted that he was the only defendant to raise
5    consent, in its opinion on the appeal of the matter. Petitioner had
     both defenses presented: that the victim had consented, and that in
6    any event, it was not his DNA that was found. He was entitled to
     present both defenses, and counsel is not shown to have made an
7    unreasonable tactical choice to present both defenses, especially
     since none of the other defendants presented consent as a defense
8    and the charges were sex offenses committed in concert by the
     group. As such, the claim fails and is denied.
9

10   *In re Singh*, No. 09F03083, slip op. at 1 (Sacramento Co. Sup. Ct. June 4, 2009). Regarding jury

11   instructions on consent, the superior court further noted that the claim was without merit because,

12   contrary to petitioner's assertion, an instruction on consent was indeed given. *Id*. at 2.

13          As the state court noted, Greiner presented a dual defense at trial, arguing both

14   consent and problems with the prosecution's DNA evidence. In support of the consent defense,

15   Greiner introduced testimony from two long term friends who described petitioner as respectful

16   towards women. (RT at 6089-94, 6101-08.) Greiner also argued that Jennifer had a motive to

17   falsely accuse petitioner and his codefendants of sexually assaulting her. (RT at 6647-50.)[8]

18          No Supreme Court precedent clearly establishes that the presentation of

19   conflicting defense strategies can constitute ineffective assistance of counsel. The Ninth Circuit

20   has declined to second guess counsel's strategic decision to present or forego a particular theory

21   of defense when the decision was reasonable under the circumstances. *See Seidel v. Merkle*, 146

22   F.3d 750, 756 (9th Cir. 1988) (self-defense and mental illness are not mutually exclusive

23   defenses).

24   ──────────────

25          [8] As set forth earlier, counsel argued that Jennifer lied about being kidnapped and raped
     because she had consensually traded sex for drugs, and needed to explain to her boyfriend why
26   she returned home without any money. (RT at 6647-49.)

Although petitioner argues that Greiner's chosen defense strategy was ineffectual in part because it presented conflicting theories of the case, he does not specify what counsel should have done differently.  For example, he fails to identify any additional evidence that Greiner could have presented to support the consent defense or to impeach Jennifer.  *See Gallego v. McDaniel*, 124 F.3d 1065, 1077 (9th Cir. 1997) (no ineffective assistance where petitioner failed to show that further investigation of a witness's background would have revealed information that might have changed the result at trial).  The mere criticism of counsel's tactics or strategy is insufficient, standing alone.  *United States v. Vincent*, 758 F.2d 379, 382 (9th Cir. 1985); *see also United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981), cert. denied 454 U.S. 1127 (1981) (a difference of opinion alone with respect to trial tactics generally does not constitute ineffective assistance).

Regarding petitioner's assertion that Greiner should have requested the trial court to instruct the jury on the defense of consent with CALJIC No. 1.23 and CALJIC No. 1.23.1, as the superior court noted, the jury *was* instructed with CALJIC No. 1.23.1 as follows:

> In the jury instructions for the alleged sexual offenses, the word consent means positive cooperation in the act or attitude as an exercise of free will.  The person must act freely and voluntarily and have knowledge of the nature of the act or the transaction involved.  Evidence that the alleged victim suggested, requested or otherwise communicated to the perpetrator that a condom be used does not by itself constitute [consent].

> A person who initially consents and participates in a sexual act has the right to withdraw that consent.  To be effective as a withdrawal of consent, the person must inform the other person by words or conduct that consent no longer exists, and the other person must stop.  The words or conduct must be sufficient to cause a reasonable person to be aware that consent has been withdrawn.  If the other person knows, or reasonably should know, that consent has been withdrawn, forcibly continuing the sexual act despite the objection is against the will and without the consent of the person.

(RT at 6201-02.)  The jury was also instructed that a reasonable and good faith belief of voluntarily consent negates criminal intent:

/////

1
2

In any of the crimes alleging unlawful sexual acts, criminal intent must exist at the time of the commission of the alleged unlawful sexual acts.

3
4
5
6

There is no criminal intent if a defendant had a reasonable and good-faith belief that the other person voluntarily consented to engage in the sexual act.  Therefore, a reasonable and good-faith belief that there was voluntary consent is a defense to such a charge, unless the defendant thereafter became aware, or reasonably should have been aware, that the person no longer consented to the sexual activity.

7
8
9
10

However, a belief that is based upon ambiguous conduct by an alleged victim that is the product of conduct by an alleged victim that is the product of conduct by the defendant that amounts to force, violence, duress, menace or fear of immediate and unlawful bodily injury on the person of the alleged victim is not a reasonable good-faith belief.

11

If after a consideration of all the evidence you have a reasonable doubt that the defendant had criminal intent at the time of the accused sexual activity, you must find him not guilty of that crime.

12

13    (RT at 6302.)

14             CALJIC No. 1.23, the other instruction petitioner contends should have been

15    given, defines consent differently but does not apply to sex crimes.  The instruction's Use Note

16    explicitly states that it should not be given in connection for a prosecution for a violation of

17    California Penal Code sections 261 (rape), 262 (rape of a spouse), 286 (sodomy), 288a (oral

18    copulation) or 289 (forcible acts of sexual penetration).  *See* CALJIC No. 1.23.  Rather, CALJIC

19    1.23.1 is the proper instruction for such offenses.

20             In sum, petitioner fails to demonstrate that Greiner's performance fell below an

21    objective standard of reasonableness.  *See Strickland*, 466 U.S. at 690.  He also fails to

22    demonstrate prejudice from counsel's alleged errors.  *See Id*.  Speculation that different trial

23    strategy or tactics would have changed the result is insufficient to show prejudice.  *Cook v.*

24    *Spalding*, 660 F.2d 738, 740 (9th Cir. 1991).  The state court's rejection of this claim is not

25    contrary to, or an unreasonable application of the *Strickland* standard for ineffective assistance of

26    counsel.

CONCLUSION

For all the foregoing reasons, IT IS HEREBY RECOMMENDED that the application for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 3, 2011

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE